# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UPS SUPPLY CHAIN SOLUTIONS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 C 2130 |
| ) | |
| AMERICAN AIRLINES, INC. and DOES ) | |
| ONE through TEN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff UPS Supply Chain Solutions, Inc. has sued American Airlines, Inc., alleging breach of a shipment contract, negligence, and breach of duty as a bailee. Both parties have moved for summary judgment on UPS's breach of contract claim. For the reasons stated below, the Court denies both motions.

## Background

In April 2007, Abbott Laboratories contracted with UPS to transport eighty drums of fish oil from Tokyo, Japan to South Bend, Indiana. UPS subsequently entered into an agreement with American Airlines pursuant to which American Airlines agreed to transport the fish oil from Tokyo to Chicago, Illinois. UPS issued an air waybill to American Airlines that stated, "KEEP COOL// MUST BE PUT IN COOLER UPON ARRIVAL AT AA/ORD." Pl. Ex. 7. The shipment was tendered to American Airlines at Tokyo's Narita Airport on April 7, 2006. A representative of American Airlines at Narita

1

stamped the air waybill with the following language: "CUSTOMER AGREES THAT REFRIGERATION IS NOT GUARANTEED." *Id.*

The shipment arrived at O'Hare Airport in Chicago, Illinois on April 7, 2006. It was not refrigerated upon arrival. Rather, it was mistakenly placed on American Airlines' bypass system, which is meant mainly for customer loaded containers (CLCs). Loose freight—cargo that is not packaged as a CLC—is handled and stored in other areas, including the cooler. The shipment at issue was loose freight, not a CLC. American Airlines contends, however, that the shipment was loose freight that had been wrapped and packaged to look like a CLC.

On April 18, 2006, UPS's nominated trucker attempted to pick up the shipment from American Airlines' facilities at O'Hare. It failed to do so. American Airlines contends that this failure was a result of the trucker's inability to load the shipment onto its truck. UPS contends that the trucker refused to pick up the shipment because Abbott rejected it once it learned that it had not been refrigerated and was therefore spoiled.

On May 1, 2006, UPS employee Toni DeStefano sent a letter to an American Airlines representative stating:

> This is to inform you that our customer is refusing this shipment due to the fact that is [sic] was left in a ULD and not kept cool. From what I understand the freight was left outside in a container during days reaching 80 degree's [sic] and the product spoiled. The product was valued well over $80,000 USD. Please advise what the airline plans to do with this product. All your help is deeply appreciated.

Pl. Ex. 13. Another UPS employee, Jean Cernosek, testified during her deposition that she faxed to American Airlines a notice of intent to file claim, but no fax was produced

2

in discovery. In a letter addressed to Cernosek dated May 29, 2006, American Airlines informed UPS that it had investigated the incident and that it was declining responsibility for the loss.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Because the parties have filed cross-motions for summary judgment, the Court "construe[s] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009) (citing *Calvin v. Home Loan Ctr. Inc.*, 531 F.3d 526, 528 (7th Cir. 2008)).

The parties agree that the Montreal Convention, a treaty concerning international air shipments, governs this case.

**A.     UPS's prima facie case**

Montreal Convention, Article 18, provides that "[t]he carrier is liable for damage

3

sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air." Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, *reprinted in* S. TREATY DOC. NO. 106-45, 1999 WL 33292734 (2000). Under the Montreal Convention, a prima facie case of liability "is established upon a showing that the goods were delivered to the carrier in good condition, were delivered to the consignee at destination in damaged condition, and resulted in a specified amount of damage." *Eli Lilly and Co. v. Air Express Int'l USA, Inc.*, 602 F. Supp. 2d 1260, 1271-72 (S.D. Fla. 2009). Because American Airlines does not challenge the first or third elements of UPS's prima facie case, the only issue is whether there was damage to the shipment upon delivery to the consignee.

UPS contends that American Airlines guaranteed that the shipment would be kept cool upon arrival at O'Hare. American Airlines contends that it specifically disclaimed any such guarantee by stamping the air waybill with the words "CUSTOMER AGREES THAT REFRIGERATION IS NOT GUARANTEED." Pl. Ex. 7. UPS contends that the stamp made at Narita Airport was not an effective disclaimer of the refrigeration guarantee for O'Hare Airport. UPS also contends that American Airlines has failed to produce any evidence concerning when it stamped the air waybill or when, if ever, UPS received notice of the stamp. Because there is no proof that UPS received notice of the disclaimer, UPS argues that the disclaimer cannot be effective.

The language of the stamp, specifically that the customer agrees that there is no guarantee on refrigeration, supports a reasonable inference that UPS had notice of the

4

disclaimer's existence. A reasonable jury could conclude that an American Airlines agent stamped the air waybill upon receipt of the package from UPS in Narita and that UPS acknowledged the disclaimer's existence. If so, a reasonable fact-finder could also infer that a refrigeration guarantee was not part of the shipment contract. As a result, summary judgment is inappropriate.

**B.      Timely notice**

Article 31 of the Montreal Convention bars claims against a carrier if there has been no timely notice of damage. Article 31 provides:

> Article 31—Timely Notice of Complaint
>
> 1. Receipt by the person entitled to delivery of checked baggage or cargo without complaint is prima facie evidence that the same has been delivered in good condition and in accordance with the document of carriage [. . .].
> 2. In the case of damage, the person entitled to delivery must complain to the carrier forthwith after the discovery of the damage, and, at the latest, within . . . fourteen days from the date of receipt in the case of cargo. [. . .].
> 3. Every complaint must be made in writing and given or dispatched within the times aforesaid.
> 4. If no complaint is made within the times aforesaid, no action shall lie against the carrier, save in the case of fraud on its part.

UPS's May 1 letter is timely, but American Airlines contends that it failed to give adequate notice because it did not state an intention to hold American Airlines liable for the loss. In support of this argument, American relies primarily upon *Denby v. Seaboard World Airlines*, 575 F. Supp. 2d 1134 (E.D.N.Y. 1983), for the proposition that the notice contemplated by the Convention "provides the carrier not merely with an indication that a shipment has been damaged, but with an express and definite

5

statement of the shipper's intention to hold the carrier liable." *Id.* at 1144.[1]

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin v. Texas*, 128 S. Ct. 1346, 1357 (2008). If the text of a treaty is clear, courts "have no power to insert an amendment." *Chan v. Korean Airlines, Ltd.*, 490 U.S. 122, 134 (1989). "[T]he doctrine of the Separation of Powers . . . precludes [courts] from altering, amended, or adding to any treaty, by inserting any clause, whether small or great, important or trivial." *Avero Belgium Ins. v. American Airlines, Inc.*, 423 F.3d 73, 85 (2d Cir. 2005) (internal quotation marks and citations omitted).

There is nothing in the text of the Montreal Convention that requires an express and definite statement that the shipper intends to hold the carrier liable. Article 31 requires that shippers "complain" to the carrier when there has been damage to shipment within a specified time frame. It does not require a statement of responsibility or blame. As a result, the Court respectfully disagrees that the Montreal Convention requires an express and definite statement of the shipper's intention to hold the carrier liable as a prerequisite to liability.

In any event, the court in *Denby* was concerned with the issue of whether written notice was required if the carrier already had actual notice of the damage. *Id.* In that

---

[1] At the time *Denby* was decided, the Montreal Convention had not yet been drafted. Its predecessor, the Warsaw Convention, was then in effect. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), ("Warsaw Convention"). The court in *Denby* construed and interpreted the Warsaw Convention, but that has no effect on the analysis here because "there is no meaningful difference between the governing provision of the Montreal Convention (Article 31) and its counterpart in the Warsaw Convention (Article 26)." *Meteor AG v. Federal Express Corp.*, No. 08 Civ. 3773, 2009 WL 222329, at *3 (S.D.N.Y. Jan. 30, 2009).

6

case, there was evidence that the shipper had made oral statements to the carrier that portions of the shipment were missing and added the notation "4" to the Tally Form upon receipt of the incomplete shipment. *Id.* at 1136. The court concluded that the oral statements were insufficient because the treaty required written notice even if the carrier had actual notice of the damage. *Id.* at 1144. The court also concluded that the notation "4" did not confer adequate notice of damage to the shipment. *Id.* Thus, the language in *Denby* upon which American Airlines relies was not necessary to the ultimate holding in that case.

*Pasquera Navimar, S.A. v. Equatoriana De Aviacion*, 680 F. Supp. 1526 (S.D. Fla. 1988), takes a different position on what is required for a proper complaint under the treaty. In that case, the court stated that the "purpose of the requirement of written notice is to adequately inform the carrier of the nature of damages claimed against it." *Id.* at 1527 (citing *Highlands Ins. Co. v. Trinidad & Tobago (BWIA Int'l) Airways Corp.*, 739 F.2d 536 (11th Cir. 1984)). The plaintiff's agent had made a notation on the air waybill that read: "415 Boxes sof [sic] & wet . . . temp +35 degree Catalina not responsible for damages or temp." *Id.* The court concluded that this notation was sufficient because "the purpose of the notice requirement is just that, to give notice."[2] *Id.* In a previous case, the Eleventh Circuit had concluded that a notation that stated

---

[2]At least one other court has espoused a similar view on the treaty's notice requirement. In *Maschinenfabrik Kern, A.G. v. Northwest Airlines, Inc.*, the court opted for an equitable interpretation of the treaty. 562 F. Supp. 232, 236 (N.D. Ill. 1983). The court concluded that written notice given to one carrier in a chain of transportation was effective against all other carriers in the chain. *Id.* "Given the relatively short time period within which written notice must be given, it would be unfair if not impossible, to force the damaged party to discover the 'culprit' as a predicate to giving notice under [the Warsaw Convention]." *Id.*

7

"lift inoperative" was insufficient to confer notice of damage to the shipment. *Id.* at 1527-28 (citing *Highlands Ins.*, 739 F.2d at 538). That notation "only indicated that the goods could not be moved by mechanical means" and did not state that the good themselves had been damaged. *Id.* at 1528. The Eleventh Circuit stated that a "notation of damage to the good on the delivery receipt would have fulfilled the requirements of [the Warsaw Convention]." *Highlands Ins.*, 739 F.2d at 538 n.3. The notation made by the plaintiff in *Pasquera*, by contrast, specifically referred to damage. As such, it was sufficient to place the carrier on notice that the shipment had been damaged.

The May 1 letter is analogous to the notation in *Pasquera*. It stated that the shipment was not refrigerated, had been exposed to temperatures in excess of eighty degrees, and that the customer was therefore rejecting the shipment as spoiled. Those statements were sufficient to notify American Airlines that the shipment had been damaged. Under the terms of the Montreal Convention, that is all that is required. Contrary to American Airlines' argument, the treaty does not require that the claimant specifically state that it will hold the carrier liable. As a result, American Airlines is not entitled to summary judgment.

## Conclusion

For the reasons stated above, the Court denies both UPS's and American Airlines' motions for summary judgment [docket nos. 27 & 31]. The case is set for a status hearing on August 27, 2009 at 9:30 a.m. for the purpose of setting a trial date

and discussing the possibility of settlement.

                                                    MATTHEW F. KENNELLY
                                                    United States District Judge

Date: August 14, 2009